STENGLEIN *v.* SAGINAW CIRCUIT JUDGE.

1. MANDAMUS—INJUNCTION—JUDICIAL DISCRETION.
    The discretion of a circuit judge in granting an injunction will be interfered with by *mandamus* only in case of a very plain abuse of such discretion.

2. EQUITY JURISDICTION—TITLE TO OFFICE—INJUNCTION.
    While title to a public office cannot be determined in a court of chancery, it is within the discretionary power of that court to issue an injunction protecting the possession of a *de facto* officer against the interference of an adverse claimant until the latter shall have established his right to the office in a proper proceeding.

3. SAME.
    The question presented on an application for such injunction is whether there is in fact a good-faith controversy over the office, and a probability of an unseemly conflict unless the court shall interfere to prevent it; and the writ would ordinarily issue as of course on such showing, unless, at least, the complainant's case, as presented by his bill, were very clearly without merit.

*Mandamus* by John Stenglein and others to compel Emmet L. Beach, circuit judge of Saginaw county, to dissolve a preliminary injunction. Submitted October 15, 1901. Writ denied October 17, 1901.

*William G. Gage* and *George W. Davis*, for relators.

*James H. Davitt*, for respondent.

MONTGOMERY, C. J. This is an application for *mandamus* to compel the respondent to vacate an order for a preliminary injunction. It appears by the return of the respondent that on June 24, 1901, Matthew Gramlich and others filed a bill of complaint against the relators, setting forth, in substance, that the complainants in such bill were, under the charter of the city of Saginaw, as it

existed prior to the amendment hereinafter referred to, and continued to be, members of the board of supervisors of Saginaw county, and representatives of the city of Saginaw on such board; that they are the actual incumbents of such office; but that the defendants named in the bill threaten to take the seats of the complainants, and sit as members of the board at future meetings of the board. The bill further alleges that at the session of 1901 the legislature undertook to withdraw the functions formerly exercised by complainants from them, and confer them upon defendants, and that said attempted legislation is unconstitutional. The bill asked for an injunction to restrain the defendants from sitting or attempting to sit as members of the board of supervisors, and also prayed that the complainants' right and title to the office be adjudicated and determined in their favor. A preliminary injunction was granted upon this bill. The case was brought to our attention at the June term upon a motion for a *mandamus;* but, it appearing that no motion to dissolve the injunction had been made to the circuit judge, we declined to interfere at that stage. A motion has since been entered in the circuit court to dissolve the injunction, and the return shows that this application was denied, and the grounds stated by the circuit judge are set forth in an opinion attached to the return. These grounds are, in brief, that the complainants in the equity case are the incumbents of the offices, and that pending a determination at law, and in a proper proceeding by *quo warranto,* the incumbents of a public office may, where the circumstances require it, obtain an injunction to restrain interference with the performance of their duties.

We do not interfere by *mandamus* to control the discretion of a circuit judge in granting an injunction, except in a very plain case; and we should not in this case, unless thoroughly convinced of the want of jurisdiction to issue such an order. An examination of the authorities demonstrates that, in other jurisdictions at least, a court of equity has the right to interpose in protection of an

officer *de facto*, against the interference of claimants
whose title is disputed, until the latter shall establish their
title by judicial proceedings provided by law.    Thus, in 2
High, Inj. (3d Ed.) § 1315, it is said:

> "The actual incumbents of an office may be protected,
> pending a contest as to their title, from interference with
> their possession and with the exercise of their functions.
> *  *  * And the granting of an injunction in such case
> in no manner determines the questions of title involved,
> but merely goes to the protection of the present incum-
> bents against the interference of claimants out of posses-
> sion, and whose title is not yet established,"—citing
> *Brady* v. *Sweetland*, 13 Kan. 41.

To the same effect is *Reemelin* v. *Mosby*, 47 Ohio St.
570 (26 N. E. 717). See, also, *Guillotte* v. *Poincy*, 41
La. Ann. 333 (6 South. 507), and *School District* v.
*Weise*, 77 Minn. 167 (79 N. W. 668).

Relators' counsel relies upon the case of *City of De-
troit* v. *Board of Public Works*, 23 Mich. 546, as estab-
lishing a different rule in this State.    That was a case not
unlike the present in some respects, but it will be noted
that the party complainant was not the officer *de facto* in
possession of the office, but the city of Detroit; second,
that the case was before the court on final hearing, and
that the real question for determination was whether
the title to the office could be determined by a court of
chancery.    It further appears in the statement of the case
by Mr. Justice CHRISTIANCY that the various officers of
the old boards, whose powers and functions it had been
attempted to transfer, had in the meantime continued to
hold over, and to act officially, as before, and that, for the
purpose of testing fully the question of the validity of the
act, informations in the nature of *quo warranto* had been
filed against these various boards, and that these cases
were, at the time of the hearing in this court, at issue.
It will be seen, therefore, that, so far from the case indi-
cating an attempt by the newly-created officers to invade
by force, or in any unseemly way, the offices held by com-

plainants, proceedings by *quo warranto* had been resorted to, and no necessity for an injunction, therefore, was shown. The question determined was that the title to an office could not be tried and determined in a court of chancery. To that holding we adhere. But it does not necessarily follow that the *de facto* officer, in possession of the office, may not be entitled to an injunction to restrain a claimant from interfering with his possession of the office until he shall entitle himself to do so by proper legal proceedings. The authorities elsewhere seem to fully sustain this right. We think, therefore, that it was within the power of the respondent to issue the writ of injunction until the defendants in the chancery case should, by resort to legal proceedings, establish their right to the office.

Having this power, has the respondent abused his discretion? It would seem that, if such power exists at all, the question presented when an incumbent seeks such protection is whether there is in fact a good-faith controversy over the office, and a probability of an unseemly conflict unless the court shall interfere to prevent it, and that, upon such a showing, the relief would follow as of course, unless, at least, the complainant's case, as presented by his bill, was very clearly without merit. Certainly it would not be the province of the court to determine a doubtful question of right to the office upon such an application as this. We think the case was one in which it cannot be said that there was any abuse of discretion, and that there is power to continue this injunction until the defendants in the chancery suit shall have resorted to legal proceedings to test the title to the office.

The alternative writ will be vacated, and the application for *mandamus* denied.

The other Justices concurred.