# THE CLEVELAND MARKET HOUSE COMMISSION A VALID BODY UNDER THE NEW MUNICIPAL CODE.

[Common Pleas Court of Cuyahoga County.]

SLATMYER ET AL, AS MARKET HOUSE COMMISSION, V. SPRING-
BORN ET AL, AS BOARD OF PUBLIC SERVICE OF
THE CITY OF CLEVELAND.

Decided, July 25, 1903.

*Constitutional Law—Classification of Cities—A Status Perpetuated
Under the New Municipal Code—A Market House Commission not
"Officers"—Appointment Under a Repealed Act of Doubtful Con-
stitutionality—Injunction—Pleading.*

1. Want of capacity to sue is a special ground for demurrer, and should
   be specially assigned when it is desired to raise the question in
   that way.

2. But inasmuch as the holding of public office is a constitutional
   right, there can be no lack of capacity to sue on the part of one
   who seeks to prevent an infringement of his right in that regard.

3. Injunction may be employed by an incumbent of a public office to
   protect his possession against interference, until the adverse claim-
   ant shall have established his title by law.

4. The appointment of persons to office under an act which may have
   been unconstitutional would not be invalidated by such unconsti-
   tutionality, where there has been a repeal of the said act and the
   substitution of another, which eliminates the objectionable features
   of the first act, and provides that those previously appointed shall
   continue to serve for the purposes for which they were appointed.

5. Members of a market house commission, appointed by the mayor
   and approved by council under provision of an act of the Legisla-
   ture, whose powers must be exercised under the supervision and
   subject to the approval of the board of public service, whose term
   of office ceases with the completion of the market house, and who
   serve without compensation, are not "officers" within the contem-
   plation of the Constitution.

6. It does not amount to a classification of cities to permit a commis-
   sion previously provided specially for the city of Cleveland to con-
   tinue to act, and the provision of Section 216 of the New Municipal
   Code in that regard is therefore not open to constitutional objec-
   tion.

7. Nor is this section rendered unconstitutional by reason of the fact
   that it perpetuates a status created by a previous enactment, which
   may have been unconstitutional but was never so declared.

KENNEDY, J.

Heard on demurrer.

This is an action brought by Henry G. Slatmyer, John Goetz and Albert G. Daykin as the Market House Commission of the City of Cleveland, Ohio, plaintiffs, against William J. Springborn, Daniel E. Leslie and Harris R. Cooley, Board of Public Service of the City of Cleveland, Ohio.

The petition alleges that plaintiffs were appointed members of the market house commission on or about the 12th day of August, 1901; that each of the plaintiffs received a notice from the board of public service of said city, of which a copy is in the petition abolishing in effect the market house commission.

The plaintiffs further say that by virtue of an act passed October 22d, 1902, known as the new code, the person or persons theretofore appointed pursuant to an act passed on April the 26th, 1898, shall continue to act for the purposes for which he or they were appointed, with the powers granted in the act of October 22d, 1902, and that they shall continue to act until the completion of the improvement for the construction of which they were appointed.

The plaintiffs then allege that they were appointed pursuant to the provisions of the act of April 26th, 1898; that they have performed certain things in connection with the business of the market house commission created by said act, and they now come into court and ask for an injunction to prevent the defendants from interfering with them in the further performance of their duties.

To this petition defendants have interposed a general demurrer and in the brief filed on behalf of defendants it is asserted that the demurrer should be sustained for the following reasons:

I.   The plaintiffs are without legal capacity to sue.

II.   The act of April 26th, 1898, was unconstitutional.

III.   Section 216 of the act of October 22d, 1902, in so far as it relates to the market house commission is unconstitutional.

IV.   The action taken by the board of public service is within their legal authority and power.

The first point made on demurrer is, that the plaintiffs are without legal capacity to sue, and might be disposed of by saying

that it is not embraced by the demurrer of the defendants. The defendants have filed in this case a general demurrer. Want of capacity to sue is a *special* ground of demurrer and, to be raised in that way, should be specially assigned.

48 O. S., 559: * * * "when want of capacity is relied on by the defendant as an objection to the maintenance of the action by the plaintiff, it should be made by demurrer or answer, and when taken by demurrer it should be specially assigned."

Kinkead in his work on Code Pleadings, says, on page 212: "It can not be raised under any of the other grounds as that the facts do not constitute a cause of action;" and cites the case of *Saxton* v. *Seiberling*, 48 O. S., 554.

But I think if it were properly raised, it is not well taken. It is the right of every person to hold office and accept employment, either public or private, whether the office be merely honorary or carries with it a salary. Any denial or infringement of that right is an attack upon the constitutional rights of the citizen; and, if it be true that there is a remedy for every wrong, the citizen, whose rights are thus invaded, should have redress.

In the petition filed in this case, plaintiffs aver that they are residents of Cleveland, and that they constitute the market house commission.

Allegation is then made that they were appointed members of said commission. The first statement shows their *status;* the second refers to them as individuals.

It is next alleged that they severally subscribed the oaths of office, gave bond, and entered upon the performance of their duties. Here again they refer to themselves as *individuals.*

Averment is then made of the nature and character of the duties enjoined upon them by law. This is followed by an allegation that the defendants acting in their public capacity, are attempting to interfere with the plaintiffs acting in *their* public capacity and to prevent them from doing those things which they are authorized to do by law and which it is their individual right to do if they will.

It is well settled in this state that the remedy by injunction may be employed by the incumbent of a public office to protect his possession against the interference of an adverse claimant whose

title is in dispute, until the latter shall establish his title in law. 47 O. S., 572; 57 O. S., 374.

In the cases just cited, the Supreme Court clearly makes it the duty of the lower courts to grant an injunction to restrain those claiming the right—in this case the board of public service, until they shall establish their title in law.

It is said in High on Injunctions, Sec. 1315:

"While courts of equity uniformly refuse to interfere by the exercise of their preventive jurisdiction to determine questions relating to the title to office, they frequently recognize and protect the possession of officers *de facto* by refusing to interfere with their possession in behalf of adverse claimants, or, if necessary, by protecting such possession against the interference of such claimants. * * * Thus the officers *de facto* of a school district may restrain persons claiming to be officers *de jure* but who are not in possession from taking possession of the school house and from interfering with plaintiffs in their employment of teachers and in their management of school affairs, and this, notwithstanding the fact that the defendants thus enjoined claimed to be the legally elected officers."

In the case of *Stenglein* v. *Saginaw, Circuit Judge,* 128 Mich., 440, it is held that:

"While title to a public office can not be determined in a court of chancery, it is within the discretionary power of that court to issue an injunction protecting the possession of a *de facto* officer against the interference of an adverse claimant until the latter shall have established his right to the office in a proper proceeding."

In *City of Huntington* v. *Cast et al,* 149 Ind., 255, injunction was sought to prevent an alleged illegally created board from taking charge of the property of the police department. It was argued that this was a controversy with reference to the rights to hold office and hence that *quo warranto* and not injunction was the proper remedy. But the court held that if, as averred, the defendants were unlawfully proceeding to take possession of the police property of the city, those in possession before might protect themselves from such invasion of their rights by injunction and by enjoining those who sought to wrest from them such possession until authority to do so was first shown.

In *Guillotte* v. *Poincy,* 41 La. Ann., 333, it was held that proceedings by injunction can not be used as a means of determining disputed title to office, but they may be properly used to protect the possession of officers *de facto* against the interference of claimants whose rights to discharge the duties of such office are disputed, until such claimants shall establish the title at law.

The court says:

"The claimant can not take the law in his own hands and, with the assistance of others, practically oust the incumbent in advance of judicial determination of the disputed right, and he and such others may be properly enjoined from such interference until the dispute shall be judicially settled."

The second claim in support of the demurrer is that the act of April 26th, 1898, which created the market house commission, was unconstitutional in that it conferred corporate powers by a special act, to-wit, that it authorized the issuance of bonds and the levying of taxes upon the property within the municipal corporation. But plaintiffs claim no rights under that law, and their duties are neither defined nor prescribed by that law. Whatever powers they have are derived wholly and solely from the law of October 22d, 1902. So that the court is unable to preceive how the validity or invalidity of the act of April 26th, 1898, can affect the rights or duties of the plaintiffs if they do not derive their powers therefrom, especially when we consider that that act had been repealed and had no existence at the time of the commencemnt of this suit.

The power of the General Assembly to pass a special act in which no corporate powers are conferred, can not, I think, be questioned; and if this be true, would a court be justified in holding that because persons had at one time been invested with corporate powers, by a special act they were not entitled to public office *after* that act has been repealed and the objectionable powers taken away? I think not. Such contention seems to me unreasonable.

The third point urged in support of the demurrer is that the act of October 22d, 1902, is unconstitutional in so far as it relates to the market house commission; and this is urged on two grounds: 1st, that it is the exercise of the appointing power by the Legislature and in contravention of Article II, Section 27 of the Constitu-

tion; 2d, that it contravenst Article XII, Section 1, in that it is a special act conferring corporate powers.

Article II, Section 27 of the Constitution prohibits the Legislature from appointing officers. It follows then, that, if the plaintiffs are officers, under the Constitution, there has been a violation of its commands. And if they are not officers, as contemplated by the Constitution, the first proposition must fall because there has been no violation of its commands.

Section 216 of the act of October 22d, 1902 (omitting certain parts not pertinent to this case), reads as follows:

"Whenever any city has in contemplation or process of construction, any market house or houses, or public hall in connection therewith, the directors of public service may provide for the employment of three citizens of such city, to be named by them, who shall constitute a commission, which shall have power, subject to the approval of the directors of public service, to contract, in the name of such city, for and supervise the building and furnishing of, any market house or houses or public hall in connection therewith, * * * provided * * * that any person or persons heretofore appointed pursuant to the provisions of an act entitled 'An act relating to market houses in cities of the second grade of the first class,' passed April 26th, 1898, or by whatever authority for the purpose provided herein, shall continue to act for the purposes for which he or they were appointed, with the powers herein granted and no others, until the completion of the improvement in connection with which they were appointed, and thereupon the work so completed shall be turned over to the proper authority of the municipality."

A consideration of the duties of plaintiffs specified and authorized by this section, discloses:

1st. That an act had been passed in 1898 relative to market houses in Cleveland.

2d. That any person appointed thereunder should continue to act for the purposes provided therein but their powers were limited by the act of 1902, all of which powers must be exercised under the supervision of, and subject to, the approval of the board of public service.

3d. That when the market house is completed, the commission ceases to exist.

The question to be answered then, is: Are such officials, having such powers and duties, with such limitations, and acting under the supervision of the board of public service, public officers in contemplation of the Constitution?

In the case of *State* v. *Kennon,* 7 O. S., 563, Judge Brinkerhoff says:

"We conclude, therefore, first, that the selection and designation, *by name,* of the defendants, by the General Assembly, *to exercise continuously,* and as a part of the regular and permanent administration of the government, important public powers, trusts and duties, is an appointment to office."

Clearly the members of the market house commission do not fall within this definition. They are not designated by name; are not regular and permanent officials, and can not perform their duties continuously, for, when the market house is completed, their commission ceases to exist.

In 21 O. S., pages 50 and 51, the court has declared that the word "offices," as used in the Constitution, "can not be regarded as comprehending more than such offices as may be created to aid in the permanent administration of the government. It can not include all the agencies which the General Assembly may authorize municipal and other corporations to employ for local and temporary purposes. These trustees have no connection with the government of the state, or of any of its subdivisions. They have nothing to do with the general protection and security of persons or property. Their sole duty is to procure and superintend the construction of a particular road, * * * and when this shall have been done, so far as appears from the act, their functions end."

As their powers and duties are defined in Section 216 of the act of October 22d, 1902, it does not appear that these plaintiffs have anything to do with the general security or protection of persons or property; that they have any administrative functions for such purposes or that they are permanent officers, and hence are not officers in contemplation of the Constitution.

The case just cited was approved in 49 O. S., 431, The Soldiers' Monument case.

The Supreme Court, in *State* v. *Jennings,* 57 O. S., 415, has defined who are and who are not public officials. There the court says:

"To constitute a public office against the incumbent of which *quo warranto* will lie, it is essential that certain independent public duties, a part of the sovereignty of the state, should be appointed to it by law, to be exercised by the incumbent, in virtue of his election or appointment to the office, thus created and defined, and not as a mere employe as subject to the direction and control of some one else."

In the case before us these plaintiffs do not have unlimited and discretionary powers in the construction of the market house. They are the mere agents of the board of public service and their acts must conform to and be regulated by that board.

Again, in *State* v. *Halliday*, 61 O. S., 171, the court says on page 172:

"The distinguishing characteristic of a public officer is, that the incumbent, in an independent capacity, is clothed with some part of the sovereignty of the state, to be exercised in the interest of the public as required by law. The office must be of a continuous character as opposed to a temporary employment, though the time be divided into terms to be filled by election or appointment in accordance with the genious of our system of government; and a bond and an oath of office are generally, though not always, required for the faithful performance of the duties of the incumbent; and compensation is made either by salary or fees, or both."

Clearly these plaintiffs do not come within this definition of the Supreme Court, because they are not in an independent capacity, clothed with any part of the sovereignty of the state, and their office is not of a continuous character, and they receive no compensation for their services.

In *State* v. *Pugh*, 43 O. S., 98, the court says:

"The act under consideration employs the statutory designation of this board, and, giving to the language 'heretofore appointed' that liberal and reasonable construction to which it is entitled, we have no difficulty in construing this provision to have reference to that board of trustees of the sinking fund in office in the city of Columbus at the time of the taking effect of the act, and not to its members as individuals.

"If we are right in this view, it follows that, instead of appointing these trustees, the General Assembly has simply clothed them with additional powers and duties. That this is not the exercise of the appointing power by the General Assembly is now too firmly established to be called in question." *State* v. *Judges*, 21 O. S., 1;

*Walker* v. *Cincinnati,* 21 O. S., 14; *State* v. *Covington,* 29 O. S., 116.

Again, in 10 C. C., 376 to 392, in which the question involved was the character of a building committee which was to act with the county commissioners in building a court house and which approaches very closely the point we are considering, it was held, that the building committee did not possess either character or qualification of public officers. On page 392, the court says:

"While they exercise powers which are exercised by public officers, they do not have the continuity of office which, it seems to us, is necessary to constitute and make them public officers. They are appointed for a definite purpose and when that purpose is carried out and that duty performed, their rights and duties terminate."

Applying the principles discussed and the questions decided by the higher courts of our own state to the case before us, I can reach no other conclusion than that the Legislature did not attempt to exercise the appointing power, and that Section 216 of the act of October 2d, 1902, is not for that reason unconstitutional.

It is contended by the defendants, that to permit any commission to continue, amounts to a classification. But, in the case of *State* v. *Pugh,* 43 O. S., 98, the court says:

"Local and special legislation is not forbidden by the Constitution. It plainly requires that all laws of a *general nature* shall have a uniform operation throughout the state, but it does not require that all acts of the General Assembly shall be of a general nature."

Hence the Legislature had full power to provide by a special act for local needs so long as it did not confer corporate powers.

These plaintiffs have no corporate powers conferred upon them. They are merely agents exercising powers delegated to them, so to speak, by the board of public service, which board is said to be the chief administrator of authority in the city, and whose approval is absolutely essential to the validity of every act of the market house commission.

This contention as to classification, I think, can not be maintained.

It is also contended by counsel for defendants, that Section 216 is likewise unconstitutional as being an attempt on the part of the

General Assembly to perpetuate the *status* created by previous unconstitutional enactment. This seems to me to beg the question, by assuming as though proved: 1st, that an act of the General Assembly, duly enacted, purporting to establish an office which the assembly has power to establish, may be treated as a nullity before it has been declared invalid by a court of competent jurisdiction in a proper case; and, 2d, that the question of constitutionality can be raised in the manner attempted by these defendants.

That a collateral attack can not be made upon the law to determine its constitutionality is too firmly settled in Ohio to be questioned at this time.

It is also claimed by the defendants that Section 216 of the code is similar to the Cincinnati curative law in attempting to cure the unconstitutional defects in the so-called fifty-year franchise in the city of Cincinnati. I can not see any similarity between the two. In the first case, the Cincinnati law had been judicially determined and declared unconstitutional at the time of the passage of the act of October 22d, 1902. The curative act, so-called, simply sought to give validity to an act which had already been declared invalid—to bring into life again a thing which had already been pronounced dead and was buried.

The law of April 26th, 1898, creating the market house commission, had never been judicially considered and never declared unconstitutional. In the latter case, there was an existing presumption of validity when Section 216 became a law, which presumption must stand until its invalidity is judicially declared. There was no such presumption in the Cincinnati case.

In the curatice law the purpose was to remedy the defects of the original fifty-year franchise law.

In the present case there is no attempt to remedy or to correct anything.

The law of 1898 is expressly repealed. The curative law sought to remedy or amend something done in the past, and was, therefore, retroactive in its operation. But Section 216 looks toward the future, towards the continuance of the market house commission, and operates in the future.

For these reasons, therefore, the demurrer is overruled.

*Goulder & Holding,* for plaintiffs.

*Newton D. Baker* and *Estep, Payer & Carey.* for defendants.