## MURPHY v. MONTMORENCY CIRCUIT JUDGE.

Mandamus—Public Officers—Elections—Injunction.
> The issuance of a temporary injunction restraining a claimant to the office of township clerk from interfering with the officer in possession, and holding over under a claim of right after an alleged tie vote at the election, is not such an improper exercise of discretion that the writ will be dissolved by mandamus.

Mandamus by William W. Murphy to compel Frank Emerick, circuit judge of Montmorency county, to dissolve a temporary injunction. Submitted December 14, 1909. (Calendar No. 23,504.) Writ denied December 30, 1909.

*O'Brien & Francis*, for relator.

*Charles R. Henry*, for respondent.

OSTRANDER, J. The return of the circuit judge to the order to show cause contains a statement of facts, not traversed, sufficient for the purposes of decision. Upon the authority of *Stenglein* v. *Saginaw Circuit Judge*, 128 Mich. 440 (87 N. W. 449), and *Blain* v. *Chippewa Circuit Judge*, 145 Mich. 59 (108 N. W. 440), we decline to interfere by mandamus to compel the dissolution of the injunction.

" At the annual township meeting held in the township of Hillman, in said county, on Monday, April 5, 1909, relator and said McNichol were opposing candidates for the office of township clerk. There was only one ticket for the several township offices printed upon the official ballot at such election, and McNichol was the candidate thereon, while relator was running as a slip candidate.

"At the close of the polls on the afternoon of April 5th the inspectors counted the ballots cast for township officers, and found the number to be 141, which agreed with

the number of electors voting for township officers as shown by the poll list and tally sheets. The board then canvassed the votes cast for each of said township offices, and, after rejecting imperfectly marked and illegal ballots, found, determined, and declared that, for the office of township clerk, relator and said McNichol had each received 64 votes, and that the result of the ballots for that office was a tie. Thereupon said board adjourned until the next day.

" On April 6th the board of election inspectors reconvened, and made out and signed in duplicate a statement of the number of votes cast for the several candidates for township offices, and the names of the persons elected thereto, and also showing that, for the office of clerk, the result was a tie between relator and said McNichol, which duplicate statements were then sent, one to the chairman of the board of county canvassers, and one, with the original tally sheets, to the county clerk. The board then proceeded to open the box containing the ballots for State officers and count the same. The electors of this township at this election had also voted, upon a small separate ballot, upon the question of the establishment of a county normal institute. No separate box had been provided for receiving the ballots upon this question, but the same had been deposited in the State box.

" In counting the votes upon this question, there was found, rolled up inside of a ballot on the normal question, a township ticket upon which the elector had voted for relator for clerk. Relator at once made claim to the board that such ballot should be counted as a vote for him. McNichol disputed this claim, and asserted his own election upon the ballots already counted which the board had decided showed a tie. The board were in doubt upon their right to count this ballot, but marked and preserved the same. Relator then asked the board to ' give him the time which the law required ' to look up the law upon the matter. No formal action was taken upon this request, but it was, at least tacitly, understood by the members of the board that time should be given relator to ascertain his right to have such ballot counted for himself. No definite time for such purpose was either fixed upon or mentioned. While McNichol was present at this time, it is a disputed question whether he made public opposition. Formally, and upon their record, the board of election inspectors adjourned without day. Upon Wednesday,

April 7th, the township board met and allowed and paid the bills of the members of the board of election inspectors for their services. Upon Friday, April 9th, the members of the board of election inspectors came together and demanded of McNichol the box containing the township ballots. Mr. McNichol had possession of such box because of his appointment on March 29, 1909, as township clerk, by the township board, under section 2328, 1 Comp. Laws. This section is as follows:

"'SECTION 2328. Whenever there shall be a vacancy, * * * in either of the township offices, except that of justice of the peace and township treasurer, the township board may make temporary appointments of suitable persons to discharge the duties of such offices respectively; and such persons, so appointed, shall take the oath of office, or file the notice of acceptance required by law, and shall continue to discharge such duties until the office is filled by election or until the disability aforesaid be removed.'

"At this time there was an entire vacancy in the office of clerk of Hillman township by reason of the removal of the clerk, Mr. George J. Crawford, from the State, and the resignation of L. W. Ostrander, his deputy. The resolution appointing Mr. McNichol as township clerk is as follows:

"'HILLMAN, MICHIGAN, March 29, 1909.

"'At a township board meeting held in the clerk's office in the township of Hillman, Montmorency county, Michigan, on the above date. Meeting was called to order by the chairman of said board. Roll called and the following officers were present: Supervisor, Robert Rea; Justices, H. Stevens and John H. Gohl. Moved by H. Stevens and supported by John Gohl that George A. McNichol be appointed as deputy clerk for the office of clerk for the township of Hillman until there is one elected and qualified. All voting in favor, motion carried.'

"Under such appointment Mr. McNichol had performed all the duties of township clerk, including the keeping of records, signing of orders, and filing of mortgages, both before and after election up to said 9th day of April. Upon said April 9th, upon the members of the board of election inspectors asking Mr. McNichol for the box of township ballots for the purpose of recounting the same, he protested against any such action, and made the claim that it was then too late to recount the ballots or take further action in the matter; that if he had not been himself

elected, then there had been no election, and he would hold over under his appointment.  Nevertheless the board did recount the township ballots.  They first took the township ticket found on April 6th, in the State box, upon which relator's name appeared for clerk, and put it with the other ballots.  And as this made 142, or one more than the number of electors voting for township officers, as shown by the poll and tally sheets, after mixing the ballots, they proceeded to draw out one.  The ballot so drawn out was one for McNichol.  The board then proceeded to recount the remaining ballots for clerk.  And the result was again a tie.  The board then informed relator and McNichol they must draw lots for the office of clerk.  Mr. McNichol again refused to participate in these latter proceedings for the same reason as before, and again asserted his own election, or if that be found wanting, then no election had been had, and his own incumbency by reason of holding over under his appointment.  The board then, upon Mr. McNichol's refusal to draw lots for the office, themselves drew for relator and Mr. McNichol, and the choice came to relator.  The board then sent the following notice :

"'HILLMAN, MICHIGAN, April 9th, 1909.
"'COUNTY CLERK OF MONTMORENCY COUNTY.
"'*Dear Sir:*  The tie between William W. Murphy and George A. McNichol was decided by the election board in favor of William W. Murphy.

"'Respectfully yours,
"'WILLIAM H. DRAPER,
"'JOHN H. GOHL,
"'GEORGE B. GOHL,
"'BYRON WIXSON,
"'DANIEL DE GEER,
"'Inspectors.'

"Thereupon relator filed his oath of office, and on April 10th his bond was approved by the township board.  On the morning of Saturday, April 10th, the township board held a meeting in the village of Hillman.  This meeting was held in the office of one Gorman, and not in the office of the township clerk in the town hall.  This was because Mr. McNichol, who was then publicly, notoriously, and to the knowledge of the relator and the township board claiming to be township clerk, and to be in possession of such office, had gone to Alpena to take legal steps to pro-

tect himself in such possession, and had taken the keys to the office of the township clerk with him. Mr. Harry Stevens, a member of the township board, and a defendant in the chancery suit, testified:

" 'That at 12 o'clock of that day (April 10th) relator showed me that the door of the clerk's office had been broken in and the lock smashed.'

" Thereupon said Stevens procured a new lock, at the instance of the board, and placed it on the door, and the supervisor gave the key to relator. Relator says he does not know who broke in the door, but I believe it was done in his interest and by some of his partisans. The combination lock on the clerk's safe in this office had been out of order and not used for some time before this, and relator says he found the inner doors of the safe unlocked, and in this way took possession of the books, papers, and records. Mr. McNichol says that, when he went away in the morning, he left such inner doors securely locked and took the keys with him. I believe if, when relator secured entrance to this office in the manner aforesaid, he found the doors of the safe open, the same had been opened in some manner by the same person or persons who broke open the door of the office. But it was sworn by Mr. Mc-Nichol and practically admitted by relator that on Sunday afternoon, April 11th, relator had asked him [McNichol] for the keys to the safe, and on being refused said he would have to break the safe doors, if McNichol did not give him the keys. Mr. McNichol did not succeed in obtaining the fiat for an injunction upon his bill filed herein upon Saturday, April 10th, but did on Monday, April 12th, and on Tuesday, April 13th, such injunction was duly served upon relator and the other defendants. On April 12th Mr. McNichol took and filed his oath of office and also filed with the township board a bond in the sum of $1,000, with sureties whom the supervisor testified were perfectly good. On Wednesday, April 14th, Mr. Mc-Nichol went to the clerk's office with some chattel mortgages which had been placed in his hands as clerk for filing, and attempted to file the same and enter them on the proper books. Relator by force ejected him from the office. From that time on relator utterly refused to recognize such injunction, and openly and defiantly disobeyed the same. Upon cause shown, an order issued requiring relator to show cause at the last May term of court why

he should not be punished for a violation of such injunction. A hearing was had upon relator's answer to such petition, and testimony taken at considerable length in open court.

"Upon the conclusion of such hearing, and the arguments of counsel, I did adjudge and determine that relator was guilty of the violation of said injunction, and was in contempt of court therefor; but I deferred the imposition of any penalty thereon until the next term of court, because, at the request of both counsel, I had deferred said arguments until after the final adjournment of said May term. The condensation of, and conclusions from, certain testimony attached to relator's petition for mandamus herein, are taken from a small part of such testimony so taken upon such application to punish for contempt. The relator never moved to dissolve such injunction until after he had been so cited for contempt in disobeying the same. The foregoing statement of the facts, and of all the material facts, as I view them, are my findings and conclusions from the bill of complaint and all of the testimony taken at said hearing.

"I further find that relator now, as sworn by himself, has no keys to any of the doors of the safe, but the same are still in the possession of McNichol. The case made by the bill, in my judgment at the time, presented the case of a *de facto* officer seeking the aid of the court in protecting himself, in his incumbency of an office, against violent and forcible dispossession, and from door and lock breakers. When this injunction issued, in my opinion and belief, complainant was still in possession of the books, papers, and records of the office, and had the same locked in the office safe. He had been dispossessed of the mere room in which the business of the office had been carried on, so far as a mere trespass can effect dispossession. But—

" ' Certainly the question of who is really the *de facto* officer cannot depend alone upon the ability of one to forcibly exclude an officer from his place of business, and while holding him out by force perform its duties to the extent of doing such business as is presented.' *Blain* v. *Chippewa Circuit Judge*, 145 Mich. 59, 66 (108 N. W. 440).

"And the testimony subsequently taken in the contempt proceedings has only strengthened my first opinion.

"The case presented by the bill justified the issuing of

the injunction in the first instance, and hence there was no lack of jurisdiction which would justify relator in ignoring and violating it. And the facts subsequently developed amply sustained maintaining the writ until the rights of the parties could be settled in an orderly manner in a proper suit at law, where alone the title to this office can be tried and determined. And to that end, and for that purpose, it was expressly provided in the order, overruling the motion of relator to dissolve, that such trial at law should be had at once, and without the usual or any delay whatever. Such order was only made upon such terms, namely:

" 'But upon this condition, that, if said defendant Murphy elects to file an information in the nature of *quo warranto* to test the title to the office of clerk of Hillman township, the complainant plead issuably thereto instanter, and thereafter join issue with the relator upon the merits on or before July 5, 1909. And, further, that upon such issues being joined as aforesaid the said complainant stipulate in writing to try the issues of fact and law so joined, upon the preference of said relator, either in the county of Alpena or in the county of Montmorency, out of term time, on or before the 20th day of July next, and to abide by and perform the judgment of the court thereon.' "

Writ denied, with costs to the complainant in the chancery suit.

HOOKER, MOORE, McALVAY, and BROOKE, JJ., concurred.